793 So.2d 1215 (2001)
Clopha COMEAUX
v.
CITY OF CROWLEY.
No. 2001-C-0032.
Supreme Court of Louisiana.
July 3, 2001.
*1216 Christopher R. Philipp, Lafayette, Counsel for Applicant.
Michael B. Miller, Crowley, Counsel for Respondent.
LOBRANO, Justice Pro Tempore[*]
This workers' compensation case has a tortured procedural history spanning over a decade. At this juncture, the sole issue is the employee's disability status. The workers' compensation hearing officer found that the employee was neither temporary nor permanently, totally disabled, and thus, by process of elimination, classified the employee as falling within the supplemental earnings benefits category. The court of appeal reversed and classified the employee as permanently, totally disabled utilizing a totality of factors including "access to employment, physical factors, age, race, literacy, and experience."[1] We granted certiorari to determine what factors other than physical condition can be considered to determine if plaintiff is permanently, totally disabled.[2] Although we reach the same result as the court of appeal our reasoning is more restrictive and is based on plaintiff's unsuccessful attempts at the rehabilitation required by La.Rev.Stat. 23:1226 as well as his physical condition.

Factual Background
The facts are virtually undisputed. In April 1990, plaintiff, Clopha Comeaux, was injured in the course and scope of his employment as a tree grinder with defendant, the City of Crowley. On the date of the accident, plaintiff was working cutting logs at a graveyard when, lifting a log, he injured his back. Unbeknownst to defendant, plaintiff had sustained a previous work-related back injury while employed as a diesel mechanic for another employer in June 1984. As a result of that previous injury, Dr. Michel Heard had performed back surgery on plaintiff in August 1984.
Following the work-related injury at issue in this case, plaintiff returned to Dr. Heard. In his May 1990 report, Dr. Heard made the following remark:
"I told this man he should never go back to doing heavy work. I think this is going to exacerbate his condition and that he should look at doing lighter and sedentary work on a permanent basis ."
Dr. Heard has continued to treat plaintiff for his back injury since then. In his latest report in the record, dated November 15, 1999, Dr. Heard opined: "[t]he patient is unable to work but is encouraged *1217 to be as active as possible within the parameters of light and sedentary activities as tolerated." (Emphasis supplied).
Also on November 15, 1999, at defendant's request for an orthopedic medical evaluation, plaintiff was examined by Dr. Gregory Gidman. Based on that one time exam, Dr. Gidman opined that plaintiff had reached maximum medical improvement, that his symptoms had "plateaued" and essentially stabilized over the last five years, that he does not need any further surgical intervention, and that he "does have a serious condition of his lower back that resulted in surgery from a prior workers' comp injury." Dr. Gidman also gave the following recommendations:
[Plaintiff] will have serious restrictions on his activity level. He should function at home and at other activity levels only within the limits of his FCE, which would be extremely light/sedentary work level with maximum lifting of occasionally ten pounds. In addition to the restrictions on the FCE, he should avoid repetitive prolonged maintenance of a forward, stooped position, prolonged and/or repetitive bending, long-lasting unchanged positions, and should avoid work that might require sudden maximum efforts or exposure to continuous vibratory motion. He should also be limited with intermittent sitting, standing and walking.
Defendant provided rehabilitation services to plaintiff through Mark Cheairs, a vocational rehabilitation expert. Rather than seek vocational training, plaintiff opted to enroll in a graduate equivalency diploma (GED) program. After six unsuccessful attempts to pass the preliminary GED tests, plaintiff quit the program. Defendant has provided plaintiff with the statutory maximum of fifty-two weeks of vocational rehabilitation; plaintiff is not entitled to any further rehabilitation services.
Simply stated, over ten years have elapsed since plaintiff's injury, yet he has neither been retrained nor rehired.

Procedural Background
In June 1991, defendant filed a pleading entitled "Petition for Workers' Compensation Offset." The purpose of this filing was to judicially invoke the reverse offset provided for by La.Rev.Stat. 23:1225 A, which allows an employer an offset when an employee is receiving both permanent total disability benefits under the state workers' compensation system and disability benefits under the federal social security system.[3] To bring this matter within the scope of Section 1225 A, defendant alleged that plaintiff was permanently, totally disabled.
In May 1993, the workers' compensation hearing officer granted defendant's request for a reverse offset, finding plaintiff permanently, totally disabled under La. Rev.Stat. 23:1221(2).[4] In so finding, the hearing officer reasoned:

*1218 The Court's finding of permanent total disability was based on clear and convincing evidence including, but not specifically limited to, claimant's age, lack of education and previous work history coupled with the medical reports and the report of the vocational rehabilitation expert.... In this case, the claimant is a fifty year old male with an eight or ninth grade education. While claimant's treating physician has placed severe restrictions on his ability to work, a vocational rehabilitation expert testified that claimant is vocational unemployable in any occupation . Additionally, claimant's former employer was even unable to find suitable shelter employment for him.
Claimant's treating physician stated that claimant is permanently disabled from heavy and very heavy work on the basis of his pre-existing injury and previous surgery. When one considers the following facts, to-wit: (1) that claimant is 50 years old (2) that claimant has only an eight or ninth grade education (3) that claimant is in constant unrelenting pain (4) that any vocational training claimant has was received over fifteen (15) years ago (5) claimant's previous work history and (6) the testimony of the vocational rehabilitation expert that claimant is unemployable it becomes abundantly clear that claimant is permanently totally disabled from any employment. (Emphasis supplied.)
On appeal, plaintiff successfully argued that the determination of permanent total disability was premature because the hearing officer failed to comply with the requirement set forth in La.Rev.Stat. 23:1226 D, which provides:
Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake *1219 such training or education. (Emphasis supplied.)
The appellate court thus remanded the case solely for a determination of the type and duration of vocational training plaintiff was to receive pursuant to La.Rev.Stat. 23:1226 D.[5]
On remand, the workers' compensation hearing officer found that plaintiff's option of pursuing a GED, as opposed to vocational training, was appropriate rehabilitation. In so finding, it commented that "[plaintiff] is only able to attend school from three to three-and-a-half hours per day because of the condition of his back." The hearing officer further found that pursuant to La.Rev.Stat. 23:1226 plaintiff was entitled during the period of rehabilitation to receive temporary total disability benefits. The hearing officer, however, granted defendant's request for an offset against such benefits for the social security disability benefits plaintiff was receiving. That offset was based on La.Rev.Stat. 23:1225 C, as construed in Garrett v. Seventh Ward General Hospital, 95-0017 (La.9/22/95), 660 So.2d 841, to apply to temporary total disabled. Neither side appealed that decision.
What precipitated the instant action was this court's decision in Al Johnson Construction Company v. Pitre, 98-2564 (La.5/18/99), 734 So.2d 623, which overruled Garrett, supra. Relying on Pitre, plaintiff commenced this action in June 1999 asserting that "[e]mployee desires to increase his weekly compensation benefits, as defendants are not allowed a setoff for Social Security benefits received under LSA-R.S. 23:1225(C)." However, even though defendant voluntarily removed the Garrett offset, rendering the issue plaintiff pled moot, it nonetheless answered and reconvened seeking to modify plaintiff's disability status from temporary total disabled to supplemental earnings benefits. Defendant's answer also asserts in the alternative that plaintiff should be classified as permanently, totally disabled so that it can invoke the reverse offset. Plaintiff responded by filing his own request to modify his disability status from temporary total to permanently, totally disabled.
For reasons detailed later in this opinion, the workers' compensation hearing officer, agreeing with defendant, classified plaintiff as falling within the ambit of the supplemental earnings benefits category. However, relying on a "totality of factors" including race, age, literacy, experience as well as physical condition, the court of appeal reversed and classified plaintiff as permanently, totally disabled. Defendant argues the incorrectness of that ruling because of the additional factors considered by the court.

Disability Status
A key to understanding disability status, suggested by a scholar in this area, is to recognize the two, often interwoven, ingredients that make up the disability concept: (i) disability in the medical or physical sense, "as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions;" and (ii) inability or decreased ability to earn wages, which is a "de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything." 4 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation Law § 80.02 (2001). Although these two ingredients generally coexist, one may be present without the other. Id.
The ultimate issue before us is the determination of plaintiff's disability status. *1220 The corollary issue is what factors, other than physical condition, can be considered when plaintiff claims to be totally, permanently disabled. Given that plaintiff is not employed, the controlling statutory provision is La.Rev.Stat. 23:1221(2)(c), which provides:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (Emphasis supplied.)
The underscored, heightened standards were enacted in 1983 as part of the legislation tightening the scope of permanently, totally disabled status. "These are difficult burdens for the worker, and the changes clearly reflect the intent that awards for total and permanent disability should be very unusual and that maximum awards for SEB for those `able to work' should also be rare." H. Alston Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La. L.Rev. 669, 686 (1984). "The phrase [`unaided by any presumption of disability'] is simply an additional statement of the difficulty of the employee's burden, and is largely superfluous in light of the `clear and convincing evidence' standard found elsewhere in section 1221." Id. at 687.
Recently, we defined the standard of "clear and convincing" in the workers' compensation context as "an `intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." Hatcherson v. Diebold, Inc., 00-3263 at p. 4 (La.5/15/01), 784 So.2d 1284 (citing Black's Law Dictionary 227 (5th ed.1979)). In finding these heightened standards satisfied in this case, the court of appeal acknowledged that generally the standard of appellate review in workers' compensation cases is manifest error. See Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). Yet, the court of appeal felt that a "de novo" review was appropriate reasoning that the hearing officer was in legal error by restricting its consideration to only the physical component of plaintiff's status.[6] Based on its review of the record and consideration of a "totality of factors," the court of appeal held:
Mr. Comeaux is now fifty-eight years old and has reached maximum medical improvement. The Functional Capacity Evaluation, as well as the opinions of both physicians, indicate that Mr. Comeaux is unable to work but is encouraged to be as active as possible within the parameters of light and sedentary activities as tolerated. Coupled with Mr. Comeaux's physical deficiencies and his age, work experience and educational inadequacies, our review of the entire record reveals that Mr. Comeaux proved by clear and convincing evidence that he is permanently and totally disabled. *1221 00-928 at p. 9, 773 So.2d at 904 (Emphasis supplied).
Defendant contends this reasoning by the court of appeal is flawed because the statute mandates consideration of only plaintiff's physical condition. Defendant argues the "totality of factors" should only be considered when evaluating plaintiff's entitlement to supplemental earnings benefits.

Physical Ingredient
The workers' compensation hearing officer strictly construed La.Rev.Stat. 23:1221(2), the statutory definition of permanently, totally disabled, as limiting the inquiry to only the physical ingredient. The hearing officer reasoned that the relevant inquiry is to consider "the physical capacity to engage in employment, as opposed to the SEB provision, which ... has a component of suitability from the intellectual, educational, socioeconomic standpoint." Addressing solely the physical ingredient, the hearing officer noted that Dr. Heard's medical reports reflect that since 1995 plaintiff's physical condition has not changed and that "since the August 2, 1995 report, Dr. Heard has fairly consistently said approved for light and sedentary activities as tolerated, although saying unable to work." The hearing officer further relied upon the functional capacity evaluation (FCE) and Dr. Gidman's report, which both reflect "at least sedentary physical capabilities." "[B]ased strictly on the physical component," the hearing officer concluded that plaintiff is "capable of sedentary activities" and that Dr. Heard goes further"sedentary to light activities."
Describing her reasoning as a process of exclusion,[7] the hearing officer reasoned that plaintiff's disability status was within the supplemental earnings benefits classification since he is "physically capable of sedentary work activity." In arriving at that conclusion, the hearing officer excluded any consideration of education, work experience or age, noting that "suitability of employment, from the intellectual standpoint, is simply not an issue ." The hearing officer thus found plaintiff entitled to supplemental earning benefits at the full rate without any reduction for earning capacity.
Reversing, the court of appeal, relying on this court's decision in Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993), found it appropriate to consider a totality of factors, including education, experience and age, reasoning:
Louisiana Revised Statutes 23:1221(2) should be interpreted to include a totality of factors when determining whether a claimant is totally and permanently disabled such as access to employment, physical factors, age, race, literacy, and experience. A totality of factors comports with the spirit of workers' compensation law. To rely solely on physical factors is too restrictive....
00-928 at p. 5, 773 So.2d at 902. The court of appeal also cited the failed rehabilitation attempt, and noted that it was no longer premature to declare plaintiff permanently, totally disabled since "all attempts at rehabilitation and retraining have been exhausted and have failed." 00-928 at p. 9, 773 So.2d at 904.
We disagree with the court of appeal's extension of Pinkins, supra, a supplemental earnings benefits case, to this permanently, totally disabled case.[8]
*1222 We agree with, however, and further expand upon, the appellate court's reliance on the unsuccessful rehabilitation attempt to support our finding of permanently, totally disabled.

Unsuccessful Rehabilitation Attempt
This case requires that we construe La.Rev.Stat. 23:1226, mandating an attempt at rehabilitation before a finding of permanent total disability is made, in pari materia with La.Rev.Stat. 23:1221(2), defining permanently, totally disabled. Under the scenario presented in this case, involving an employee who has unsuccessfully attempted rehabilitation, it would defy logic and render La.Rev.Stat. 23:1226 meaningless to exclude from consideration the employee's inability to be educated or retrained in determining if such an employee is permanently, totally disabled. As one court has noted in addressing a similar issue, while lack of education alone is not sufficient to establish permanently, totally disabled, lack of education combined with lack of ability to be educated should not serve as a bar to permanently, totally disabled status. Anthony v. Georgia Pacific Corp., 589 So.2d 47 (La.App. 1st Cir.1991), writ denied, 594 So.2d 895 (La.1992)(rejecting argument that it was error to consider employee's lack of education and low intellectual capacity coupled with physical limitations resulting from back injury in determining permanently, totally disabled status). See also Denis Paul Juge, Louisiana Workers' Compensation § 11:2 (2nd ed.2001)(collecting other appellate cases similarly considering such factors to find permanently, totally disabled status).
Obviously, the Legislature intended, by imposing in La.Rev.Stat. 23:1226 a mandate that the prospects of rehabilitation be explored before an employee is classified as permanently, totally disabled, that the resultsnegative as well as positive of such attempted rehabilitation be considered in ultimately determining disability status. As plaintiff aptly points out, a contrary conclusion would result in only paraplegics falling within the permanently, totally disabled status. That the Legislature could not have so intended such a result is evidenced by the separate statutory presumption set forth in La.Rev.Stat. 23:1221(4)(j), which provides a presumption of permanently, totally disabled for an employee that is paraplegic.
Accordingly, when, as in this case, such attempt at rehabilitation fails, the employee's lack of ability to be educated or retrained cannot be ignored.

Plaintiff's Permanently, Totally Disabled Status
In this case, plaintiff testified at trial that there was no job he could perform. *1223 Plaintiff's testimony was corroborated fully by his treating physician, Dr. Heard. Dr. Heard's numerous reports were introduced into evidence. Consistently, Dr. Heard has opined that plaintiff will never be able to return to any type of manual employment. Dr. Heard's latest report in the record, dated November 15, 1999, expressly states his most current opinion; to wit: "[t]he patient is unable to work but is encouraged to be as active as possible within the parameters of light and sedentary activities as tolerated." (Emphasis supplied.) We interpret this opinion to mean plaintiff is physically unable to work.
Defendant failed to address Dr. Heard's latest report in its arguments to this court; rather, defendant focused its argument on a snippet from Dr. Heard's earlier report dated October 6, 1997,[9] which states:
He does occasional labor work. He has an 8th grade education. He is studying for his G.E.D. He gave good effort for his functional capacities evaluation which shows him functioning at a sedentary level.
Defendant's reliance on this stale report is misplaced for several reasons. First, the doctor's current opinion is dispositive. Second, and most significant, the quoted snippet is taken from the patient history portion of the report; in the recommendation portion of that same report is the oftrepeated opinion (verbatim to that in the latest report and repeated in multiple other reports issued by Dr. Heard over the last decade); to wit: "[t]he patient is unable to work but is encouraged to be as active as possible within the parameters of light and sedentary activities as tolerated." (Emphasis supplied.)
Even Dr. Gidman, defendant's doctor, to some extent corroborated plaintiff's inability to perform any type job. Dr. Gidman expressed strong reservations regarding plaintiff's vocational rehabilitation prospects, stating in his November 15, 1999 report: "It would be very difficult to find any type of appropriate work for him since he has very limited skills as far as reading and writing, and his previous occupation has been as a laborer."
The hearing officer gave two reasons for discounting Dr. Gidman's concerns regarding plaintiff's dim vocational rehabilitation prospects: (1) Dr. Gidman is not a vocational expert, and (2) "the statute focuses on the physical components in order to establish temporary or permanent total disability." We find that neither of these reasons are valid.
As discussed previously, under the unique facts of this case, a strict view confined to the physical ingredient is misplaced. And, as to Dr. Gidman's lack of expertise in vocational rehabilitation, we first note that the evidentiary rules are relaxed in workers' compensation proceeding. But, more important, even though no vocational expert was called at the last trial of this matter, at the earlier trial, defendant's own vocational rehabilitation expert, Chearis, testified that plaintiff was permanently, totally disabled and "would never again be able to work." 93-1116, 638 So.2d at 660. He further testified that given plaintiff's limited training and the severity of his disability, the sole job offer that could be located for him was as a utility worker with defendant. Even that possible job, Chearis testified, was ruled out by Dr. Heard's restrictions of plaintiff to "light sedentary employment with no repetitive squatting, stooping, or prolonged standing." Id.
*1224 We therefore hold that plaintiff's unsuccessful attempt at the rehabilitation required by La.Rev.Stat. 23:1226 is a proper factor to consider, along with his physical incapacity, in deciding his disability status. And, after considering these factors we are satisfied that plaintiff has proved by clear and convincing evidence that he is permanently, totally disabled.[10]

Decree
For the foregoing reasons, the judgment of the court of appeal is affirmed.
VICTORY, J., dissents and assigns reasons. TRAYLOR, J., dissents for reasons assigned by VICTORY, J.
VICTORY, J., dissenting.
La. R.S. 23:1221(2)(c) provides that total permanent disability shall be awarded only if "the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature of character of the employment or self-employment ..." La. R.S. 23:1221(2)(c) (emphasis added). While I agree with the majority that the court of appeal wrongfully extended Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993), I dissent from the majority's holding that plaintiff is permanently totally disabled because of his "inability to be educated."
The majority's holding ignores the clear wording of La. R.S. 23:1221(2)(c) which requires that the employee prove that he is physically unable to work. The medical testimony was universally consistent that plaintiff can perform light sedentary work. Further, plaintiff testified at the administrative hearing that he stays home and cares for his 11 year old daughter, cooks, cleans the house, washes clothes, mows the lawn, deer hunts, drives his three-wheeler, and drives four hours to his doctor's appointments. The plaintiff did not prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment.
In an effort to sidestep the requirement that the plaintiff prove he is physically unable to work, the majority hinges its opinion that plaintiff is permanently totally disabled on the fact that his attempt at rehabilitation failed. However, plaintiff's Functional Capacities Evaluation recommended that his rehabilitation include exercises, strengthening and flexibility program and cardiovascular training. Further, rather than undergo vocational training for a sedentary job, plaintiff chose to pursue his GED. After being in the program for one year, he failed six practice tests, particularly in math, and quit the program to provide child care for his 11 year old daughter at home. Thus, plaintiff's chosen mode of rehabilitation, which he quit and which involved a higher level of intellectual skill than is necessary for many sedentary jobs, failed. However, there are many sedentary jobs which do not require a high school education and which plaintiff could do with minimal training.[1] In addition, plaintiff's failed rehabilitation attempt had nothing to do with the back injury on which his disability status is *1225 based. Nevertheless, because plaintiff did not pass the GED practice tests and quit the program, the majority finds that he has unsuccessfully attempted rehabilitation due to his "inability to be educated or retrained" and is thus permanently totally disabled. This holding is erroneous because it puts an intellectual element into the permanent total disability determination under La. R.S. 23:1221(2)(c) that the legislature expressly excluded from consideration.
For all the above reasons, I respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision. Judge Felicia Toney Williams, of the Second Circuit Court of Appeal, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] 00-928 at p. 5 (La.App. 3rd Cir.12/12/00), 773 So.2d 899, 902.
[2] 01-0032 (La.3/23/01), 787 So.2d 1004.
[3] La.Rev.Stat. 23:1225 A provides in part:

The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits....
[4] La.Rev.Stat. 23:1221(2) provides:

(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in pain, such employee shall not receive benefits pursuant to this Paragraph but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable.
(e) The issue of permanent total disability provided herein shall not be adjudicated or determined while the employee is engaged in employment pursuant to R.S. 23:1226(G), but such employment shall not prevent adjudication or determination of the employee's right to any other benefits otherwise provided by this Chapter; however, the employee shall not by virtue of employment pursuant to R.S. 23:1226(G) be deprived of the right to determination or adjudication of permanent total disability herein at a time when he is not engaged in such employment.
[5] 93-1116 (La.App. 3rd Cir 4/6/94), 638 So.2d 658, writ denied, 94-1184 (La.6/24/94), 640 So.2d 1355.
[6] As we find the facts of this case support the court of appeal's conclusion that plaintiff satisfied the clear and convincing standard, we decline to address the argument raised regarding manifest error versus de novo review.
[7] The hearing officer first noted that plaintiff's condition is no longer temporary, but rather is permanent; plaintiff has reached maximum medical improvement. That fact finding is undisputed.
[8] Likewise, in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, we addressed the relevance of such factors in the supplemental earnings benefits context. Banks presented the issue of whether the employer had established job availability for purposes of proving an employee's earning capacity. In that context, we defined a "suitable job" to mean "a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education." 96-2840 at p. 11, 696 So.2d at 557 (Emphasis supplied). We stressed that these factors are relevant "not to ensure that an employee is `particularly suited' for a given post-injury job, but, rather, to ensure that the employee is capable of performing the job." 96-2840 at p. 11, 696 So.2d at 557 n. 3. This case involves a converse burden of proof; in the permanent, total disability context, the burden is entirely on the employee to prove his incapacity of performing any work. As discussed elsewhere, in proving that negative, we conclude that when, as here, the employer has been given the opportunity to rehabilitate the employee, yet such attempt was unsuccessful, logic dictates that it is appropriate in determining whether the employee satisfied his heightened burden of proof to allow consideration of that factor to corroborate the medical evidence of permanent, total disability.
[9] Defendant's brief refers to an August 6, 1997 report by Dr. Heard. The record contains no report for that date. We assume defendant's argument is based on the report in the record dated October 6, 1997, which contains the language defendant quotes.
[10] Despite suggestions to the contrary, we note that a finding of permanently, totally disabled is not forever; such a finding is always subject to modification, as expressly provided for in La.Rev.Stat. 23:1221(2)(d).
[1] Plaintiff's work history includes working for a jukebox company where he collected money out of jukeboxes and cigarette machines, and counted and recorded the amount of money he collected, and was a diesel mechanic. There is little doubt that plaintiff can still perform the job of collecting and counting money from jukeboxes, as well as many other sedentary jobs, such as working behind an auto parts counter (as he has training as an diesel mechanic).