# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-1149

WILLIAM TONY REEVES

VERSUS

INTERNATIONAL MAINTENANCE CORPORATION


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 02-09174,
HONORABLE CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


## JIMMIE C. PETERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Jimmie C. Peters, Michael G. Sullivan and Glenn B. Gremillion, Judges.


**REVERSED AND RENDERED.**


Mark Zimmerman
Attorney at Law
4216 Lake Street
Lake Charles, LA  70605
(337) 474-1644
COUNSEL FOR PLAINTIFF/APPELLANT:
    William Tony Reeves


Gregory E. Bodin
Phillip E. Foco
Edward D. Hughes
Taylor, Porter, Brooks & Phillips L.L.P.
Post Office Box 2471
Baton Rouge, LA  70821
(225) 387-3221
COUNSEL FOR DEFENDANT/APPELLEE:
    International Maintenance Corporation

PETERS, J.

William Tony Reeves appeals a judgment in which the workers' compensation judge (WCJ) declared him not to be permanently and totally disabled, declared him to be capable of returning to work but at a zero-base earning capacity, and rejected his claim for penalties and attorney fees. For the following reasons, we reverse and render.

## DISCUSSION OF THE RECORD

On August 15, 2001, Mr. Reeves developed chemically induced asthma in the course and scope of his employment with International Maintenance Corporation (IMC) when a "pipe busted and [he] got sprayed in the face" with titanium oxychloride and hydrochloric acid. Following the work accident, IMC paid Mr. Reeves benefits, including temporary total disability benefits in the amount of $388.00 per week.

However, issues subsequently arose concerning the payment of certain medical expenses. Thus, Mr. Reeves filed a claim on December 10, 2002, for payment of these medical expenses. Thereafter, during the month of November 2003, IMC reduced Mr. Reeves' benefits to supplemental earnings benefits at a rate of $293.34 to reflect an earning capacity of $6.00 an hour based on a listing of jobs identified for Mr. Reeves. On December 10, 2003, a hearing was held to address the issues of payment of medical expenses and Mr. Reeves' disability status, *i.e.*, whether he was permanently and totally disabled or was entitled only to supplemental earnings benefits. The parties reached a resolution regarding the medical expenses, which resolution they recited on the record at the hearing. Regarding Mr. Reeves' disability status, the WCJ decided to appoint an independent medical examiner (IME) in the specialty of pulmonary medicine to address the issue of Mr. Reeves' disability, and

therefore the WCJ pretermited ruling on the issue at that time. Additionally, IMC agreed at the hearing to reinstate Mr. Reeves' temporary total disability benefits in the amount of $388.00 per week pending the WCJ's ruling on the disability issue.

Accordingly, on January 14, 2004, Mr. Reeves filed a claim for penalties and attorney fees in connection with IMC's reduction of his indemnity benefits and for "any medical and indemnity benefits possibly allowed in his claim." Following a hearing, the WCJ concluded that Mr. Reeves was capable of returning to light-duty work and therefore was not permanently and totally disabled but was entitled to supplemental earnings benefits at a zero-base earning capacity. However, the WCJ rejected Mr. Reeves' claim for penalties and attorney fees. Mr. Reeves has appealed, contending that the WCJ erred in failing to find that he was either permanently and totally disabled or temporarily and totally disabled and in rejecting his claim for penalties and attorney fees. Additionally, Mr. Reeves seeks attorney fees for work done on appeal.

**OPINION**

*Disability Status*

An employee is entitled to an award of permanent total disability benefits "only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment." La.R.S. 23:1221(2)(c).

2

The WCJ concluded that Mr. Reeves was not permanently and totally disabled. It is undisputed that Mr. Reeves cannot return to work at an industrial chemical plant. However, there is some evidence in the record to suggest that Mr. Reeves can return to some type of activity. Dr. Jana Kaimal, Mr. Reeves' treating pulmonologist, indicated that "it would be best for him to go back to work doing something." Dr. Kaimal testified that there was only "a possibility that he may not be able to do anything." Dr. Kaimal also signed off on several jobs for Mr. Reeves. Additionally, Dr. Judd Shellito, the IME appointed by the WCJ, was of the opinion that Mr. Reeves could return to work with restrictions. Also, a functional capacity evaluation revealed that Mr. Reeves demonstrated the ability to possibly perform medium-duty work with restrictions.

As a reviewing court, we may not set aside the WCJ's findings of fact absent manifest error or unless they are clearly wrong. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Still, we must do more than simply review the record for some evidence which supports the WCJ's findings; we must review the record in its entirety to determine whether the WCJ's findings were clearly wrong or manifestly erroneous. *Id.*

Reviewing the record in its entirety, it is clear that Mr. Reeves is physically unable to engage in any employment within the meaning of La.R.S. 23:1221(2). While Dr. Kaimal was of the opinion that it was best for Mr. Reeves to return to work doing "something," he explained: "The thing about me is . . . all my statements regarding a person getting a job . . . has [sic] to do with . . . the belief that a person on total disability doing nothing is much worse off in society and life than a person who does even a small something. . . . And so, always *I will always recommend* them to

do something. *Even if they're totally disabled, they can volunteer for something. . . . [T]hat's why I always push them to try to get a job . . . ."* (Emphasis added.) The doctor couched his opinion regarding Mr. Reeves' ability to work in terms of "[h]e should try; and if he fails, that's okay." However, being physically able to try employment is not tantamount to being physically able to "engage in" employment for purposes of La.R.S. 23:1221(2)(c). *See Comeaux v. City of Crowley*, 01-0032 (La. 7/3/01), 793 So.2d 1215 (interpreting a doctor's statement that the claimant was unable to work but was encouraged to be as active as possible within the parameters of light and sedentary activities as tolerated to mean that the claimant was physically unable to work). Further, Dr. Kaimal understood the meaning of inability to work to be as follows: "I can say no he can never work. He will never be able to do anything constructive, which is I'm declaring him dead . . . ." As we appreciate Dr. Kaimal's testimony, a person would have to be dead to be declared totally disabled. Under that standard, no one would ever qualify for permanent and total disability benefits.

Importantly, Dr. Kaimal testified that asthma is sporadic and that a person can have a "daily mild amount of problems" and then can have "severe problems intermittently." The doctor explained that if an asthma attack is severe, it can be life-threatening, and he noted that Mr. Reeves' asthma attacks last from two to three days to a few minutes, depending on the severity. Dr. Kaimal testified that when Mr. Reeves has an asthma attack, he has shortness of breath and cannot do anything. Mr. Reeves must take his usual nebulizer treatment, and Dr. Kaimal testified that sometimes he prescribes additional medication when Mr. Reeves has an attack.

According to Dr. Kaimal, many things can trigger an asthma attack, such as "[a] change of weather, a change of pollution level, exposure to chemicals, exposure

4

to anything which is irritating, infections," and smoke. In fact, common chemicals such as chlorine, oven cleaners, and ammonia can precipitate an attack. Even diluted cleaning products can cause some problems, depending on the duration of the use of the products. Further, common cooking activities can trigger an attack, with the doctor giving examples such as frying peppers, barbecuing, and cutting up jalapenos. According to Mr. Reeves, he "can walk by somebody with perfume on and it will trigger an asthma attack." Moreover, physical activities that do not trigger asthma attacks can nevertheless be problematic for Mr. Reeves, such as lifting anything "below the knuckle level," because such activities cause him to "get[] short of breath," according to Dr. Kaimal. Additionally, people with asthma are more prone to infection.

Unfortunately, Mr. Reeves' condition is such that he will have to continue with his medication regime, and "[i]t may never be completely controlled." Dr. Kaimal was of the opinion that Mr. Reeves was "not going to get any better than this," and the doctor placed him at maximum medical benefit.

Still, Dr. Kaimal signed off on various jobs for Mr. Reeves, which included jobs as a sandwich artist, deli worker, stocker, auto parts clerk, and sales representative. However, as we appreciate Dr. Kaimal's testimony, he signed off on the jobs because he was of the opinion that Mr. Reeves should try to do something. The doctor was not sure he could actually do the jobs, but he indicated that it was "worth a shot." When Mr. Reeves attempted to apply for the jobs listed, he was turned down because of his physical condition. Additionally, when Mr. Reeves did attempt to return to work at other jobs, he was laid off because of his asthma attacks.

We note that Dr. Shellito was of the opinion that Mr. Reeves could return to work but with restrictions, which included avoidance of "exposure to fumes, dust, strong chemical odors, and extremes of temperature." Additionally, a functional capacity evaluation demonstrated that Mr. Reeves can possibly perform medium-level work with restrictions of avoiding squatting or crouching, limiting stair climbing, limiting lifting and carrying to medium levels, and no lifting below knuckle level. However, the functional capacity evaluation was submitted by the examiner with the caveat that "FCE's are generally conducted on individuals who demonstrate limited functioning secondary to musculoskeletal related problems" rather than "secondary to . . . respiratory difficulties." The examiner explained that cases such as Mr. Reeves' "become more problematic" and that the examiner "was *reluctant* to have Mr. Reeves perform to a level which would place maximum stress on his respiratory system." (Emphasis added.) Thus, the examiner reported that Mr. Reeves was tested for "most activities to an *occasional frequency*." (Emphasis added.)

Essentially, while some evidence reveals that Mr. Reeves can theoretically perform some work activity with restrictions, the totality of the evidence demonstrates that, practically, this will be impossible due to the unpredictability of the disease, the list of environmental conditions that can trigger an asthma attack in him, and the limitations on his physical activities. In other words, Mr. Reeves is so environmentally sensitive and physically limited that we cannot envision a work environment where Mr. Reeves could "engage in" employment within the meaning of La.R.S. 23:1221(2)(c). The fact that Mr. Reeves can do limited activities at certain times for limited periods of time does not equate to employment capability. Thus, while there was some evidence to support the WCJ's conclusion regarding the extent

of Mr. Reeves' disability, the totality of the evidence reveals that the WCJ was clearly wrong. Accordingly, we reverse and hold that Mr. Reeves is permanently and totally disabled.

### *Penalties and Attorney Fees*

IMC reduced Mr. Reeves' temporary total disability benefits to supplemental earnings benefits with a $6.00 per hour wage-earning-capacity base due to a listing of jobs identified for Mr. Reeves. As set forth above, Mr. Reeves is permanently and totally disabled, and IMC should not have reduced his benefits. However, pursuant to La.R.S. 23:1201(F)(2), penalties and attorney fees are not due where the employer *reasonably* controverts the claim for benefits.

In the instant case, it appears that the $6.00 per hour figure was based on some type of average of the wages applicable to the jobs identified for Mr. Reeves. While the jobs were available when IMC notified Mr. Reeves of the jobs, Dr. Kaimal signed off on the jobs when most were no longer available. Thus, when IMC reduced Mr. Reeves' benefits, the information it had was stale. Further, Mr. Reeves was turned down for these jobs due to his physical condition and limitations. Accordingly, IMC's attempt at rehabilitation through the identification of these jobs failed. This information was either known by or at least available to IMC through the vocational rehabilitation consultant well in advance of IMC's reduction of Mr. Reeves' benefits. Thus, IMC did not reasonably controvert Mr. Reeves' claim for benefits.

Because IMC did not reasonably controvert Mr. Reeves' claim for weekly disability benefits, we award Mr. Reeves $2,000.00 in penalties and $2,000.00 in attorney fees in connection with the reduction in his benefits. Concomitantly, we award Mr. Reeves $1,000.00 in attorney fees for work done on appeal.

7

**DISPOSITION**

For the foregoing reasons, we reverse the judgment below and hold that William Tony Reeves is permanently and totally disabled. We award Mr. Reeves penalties in the amount of $2,000.00 and attorney fees in the amount of $2,000.00 in connection with the improper reduction in benefits. We additionally award Mr. Reeves $1,000.00 in attorney fees for work done on appeal. We assess costs of this appeal to International Maintenance Corporation.

**REVERSED AND RENDERED.**