PAUL A. BONIN, Judge.
1 lAfter seventeen years of Kerry Phillips’ receiving temporary total disability indemnity benefits, following the work-related accident and injury of this now fifty-nine year old former New Orleans police officer, the Office of Workers’ Compensation judge determined that Mr. Phillips was not entitled to permanent total disability benefits and dismissed his claim with prejudice. The OWCJ found that Mr. Phillips had not carried the burden imposed upon him by La. R.S. 23:1221(2) to show by clear and convincing evidence that he was physically unable to engage in any employment because — despite his working in pain — Mr. Phillips’ experience and intelligence did not result in his inability to work in a sedentary position. Mr. Phillips appeals.
Upon our review, we conclude that the OWCJ made a legal error by misapplying the legal principles underlying La. R.S. 23:1221(2) and we accordingly undertake a de novo review of the evidentiary record. Upon our review, we find that Mr. Phillips proved by clear and convincing evidence that he |¡>is physically unable to engage in any employment and is entitled to perma *824 nent total indemnity benefits under the workers’ compensation act. We reverse the finding of the OWCJ to the contrary and remand to the OWCJ for a calculation of the benefits payable to him.
We explain our decision in more detail in the following Parts.
I
In this Part we describe the history of this matter and Mr. Phillips’ pertinent medical history.
A
Kerry Phillips was employed as a police officer with the New Orleans Police Department. Following an accident on April 23, 1995, which occurred within the course and scope of his employment, and resulted in a back injury, he filed a claim against the City of New Orleans for workers’ compensation benefits.
Mr. Phillips’ back was injured while he was attempting an arrest. While Mr. Phillips was grabbing the suspect, she pushed Mr. Phillips, he lost his balance, and she tried to run away, causing Mr. Phillips to twist his back. Initially he attempted a return to work. The pain level in his back substantially increased. The department transferred him to a desk job in an effort to accommodate his injury. He could not complete even one day at the sedentary assignment.
After an initial claim-filing, Mr. Phillips and the City entered into a consent judgment whereby the City brought Mr. Phillips current on the disability indemnity benefits owed to him and began paying his benefits on a regular, periodic basis; the IsCity also initially paid his attorney’s fees and statutory penalties. For his part, Mr. Phillips dismissed with prejudice all of his workers’ compensation claims against the City except for the future determination of his status as permanently and totally disabled.
More recently, Mr. Phillips filed a claim for a determination that he is permanently and totally disabled. The matter was tried by the OWCJ. She found that Mr. Phillips did not carry his burden of proving that he was entitled to permanent total disability benefits pursuant to La. R.S. 23:1221(2) and dismissed his case with prejudice.
The OWCJ based her decision on her finding that Mr. Phillips’ functional capacity evaluations in 2003 and 2010 showed that he was able to work and that because he is intelligent he is an excellent candidate for rehabilitation. The OWCJ also noted that she had observed his demeanor during the hearing. The OWCJ did observe, however, that every doctor who has examined Mr. Phillips since 2009 has reported that he is permanently and totally disabled and unable to work in any capacity. But the OWCJ concluded that pain was Mr. Phillips’ only injury at the time of the trial, and that pain cannot be the sole cause of permanent total disability or of a benefits award based upon such disability. The OWCJ decided that where substantial pain is the sole complaint, the claimant must also show an inability to be rehabilitated, but that Mr. Phillips had failed to show that he could not be rehabilitated.
JiP
We turn now to review more closely Mr. Phillips’ injuries and the course of the medical restrictions placed on his ability to work. Since the onset of Mr. Phillips’ injury in 1995, his condition has worsened. He has continued under the care and treatment of physicians and has been intermittently examined by physicians at the request of the City. He has also been evaluated for functional capacity.
We begin by noting that there is no dispute that whatever Mr. Phillips’ current *825 physical condition is it is related to his work-related injury. His back injury is the result of failed back surgery syndrome, caused by surgery necessitated by his workplace injury. Mr. Phillips suffers from a building up of calcium in and a narrowing of his left neural foramen and a posterior convexity causing a narrowing of his right neural foramen, as well as a narrowing of the disk space. The narrowing of the openings in Mr. Phillips’ spine impinges on his nerve roots, a condition which prevents Mr. Phillips from sitting or standing for prolonged periods.
Mr. Phillips received his first surgery in connection with his April 23, 1995 injury in that same year. Dr. James Ricciardi, who saw Mr. Phillips in the Tulane University Hospital emergency room, performed the first surgery, a laminectomy and a diskec-tomy. At first Dr. Ricciardi reported to Mr. Phillips, on March 5, 1996, that he could perform light duty work but that he may have back and leg pain while he works. Dr. Ricciardi discharged Mr. Phillips on March 18,1996.
| sThe next day, Mr. Phillips sought the treatment of Dr. Maria Palmer, a neurologist. Since that day in 1996, Dr. Palmer has been Mr. Phillips’ primary physician. Dr. Palmer’s first impression of Mr. Phillips was that he had lumbar radiculopathy caused by either his herniated disc or persistent mechanical compression of the nerve root.
At this point in the discussion we emphasize the well-accepted and longstanding precept that as Mr. Phillips’ treating physician, Dr. Palmer’s opinions are entitled to be accorded considerably greater weight than those of other physicians who may have seen Mr. Phillips only once or for a limited time or a limited purpose. See Jaeckle v. Dresser Industries, Inc., 457 So.2d 646, 648 (La.1984). Dr. Palmer observed Mr. Phillips’ condition worsen over time. She witnessed his active denervation and loss of muscle in his legs, especially in his left leg.
In 1996, Dr. Palmer referred Mr. Phillips to Dr. John Jackson to determine whether he needed additional surgery. Between 1996 and 2002, Dr. Jackson performed two surgeries on Mr. Phillips. The first surgery performed by Dr. Jackson was a second laminectomy. The second surgery performed by Dr. Jackson was a fusion of L4-5 and L5-S1. Before Mr. Phillips had reached maximum medical improvement, Dr. Jackson retired and referred Mr. Phillips to Dr. Bradley Bartholomew.
At the point in time Mr. Phillips reported to Dr. Bartholomew, he offered a pedical screw fixation at L4-5. Mr. Phillips refused, however, saying that he was | Rstill in pain but was not hurting bad enough to justify more surgery. Although Dr. Bartholomew found no need for additional back surgeries, in order to alleviate pain, he considered the possibility of a dorsal column stimulator. Dr. Bartholomew had Mr. Phillips see a psychologist and a neu-ropsychiatrist before recommending a surgeon to install the spinal cord stimulator.
In 2008, at the recommendation of Dr. Bartholomew, Mr. Phillips underwent a functional capacity evaluation to assess his ability to return to work. Mr. Phillips would ultimately undergo two functional capacity evaluations, one in 2003 and another in 2010.
The report from the 2003 evaluation stated that the results were equivocal because they may not have been a true indication of what Mr. Phillips was able to do, but what he was willing to do at the time.[1] *826 Still, based on what Mr. Phillips was willing to do at the time, the evaluator found that Mr. Phillips was able to perform medium demand level job tasks and suggested additional temporary restrictions on Mr. Phillips’ work duties: that he be allowed occasional breaks from prolonged standing, walking, and sitting; that he be limited on the amount and frequency of weights he must lift, push, or pull; and that his prolonged driving and twisting while seated be limited. The report also suggested that he start working four-hour days for two weeks before he progress up to eight-hour days.
In 2003, Dr. Bartholomew agreed with the FCE and approved Mr. Phillips for medium level work. At the request of the City Dr. Walter Truax examined Mr. |7Phillips on two occasions, once in 2005 and once in 2006. Dr. Truax agreed with the opinion of Dr. Bartholomew and found that Mr. Phillips could not return to work as a police officer, but that he could return to medium level work subject to certain limitations described in his FCE.
From 2005 to 2010, Dr. Palmer noticed an increase in Mr. Phillips’ nerve damage and loss of muscle in his legs, primarily his left leg. She ordered the myelogram and CT scan in 2006, which discovered the narrowing of the openings in Mr. Phillips’ spinal column, the source of his physical limitations.
Dr. Bartholomew later referred Mr. Phillips to Dr. Paul Hubbell, who, in 2009, surgically implanted a spinal cord stimulator to alleviate pain, which worked only temporarily.
Mr. Phillips underwent a second FCE in 2010. The evaluation showed a marked decrease in Mr. Phillips’ ability to work. The report from this test stated that Mr. Phillips fully cooperated with the test, and that it, therefore, is an accurate representation of his abilities.
Mr. Phillips argues that although the 2010 evaluation did not specify an exertion level, the evaluating doctor deferred the final ruling of Mr. Phillips’ ability to work to Mr. Phillips’ primary physician, Dr. Palmer, and Dr. Palmer opined that Mr. Phillips was unemployable.
Drs. Hubbell and Palmer are Mr. Phillips’ two current treating physicians. Mr. Phillips sees Dr. Hubbell only when he has an issue with the neural stimulator and sees Dr. Palmer regularly every two months. Dr. Palmer prescribes Mr. | ^Phillips with his numerous pain medications. As of 2010, Dr. Palmer reported that Mr. Phillips was suffering from active nerve damage and nerve loss. Mr. Phillips also suffers from constant back pain, leg pain, and increasing weakness in both legs. The nerve damage, pain, and weakness are caused by fibrous tissue at the site of his previous surgeries, and additional surgery is not recommended because more surgery could just aggravate the problem. Mr. Phillips can only be active three to four hours out of the day. Dr. Palmer reported that Mr. Phillips’ condition is not expected to improve and is likely to only get worse.
Dr. Palmer, to whom Dr. Hubbell defers, determined that Mr. Phillips is totally disabled and that his condition is not expected to improve because of the restrictions arising from the nerve damage. Dr. Daniel Trahant examined Mr. Phillips on behalf of the City in 2010, and reported that Mr. Phillips is permanently disabled “for any and all types of gainful employment.”
*827 At trial Mr. Phillips testified that he is in constant pain. Even an elastic waistband causes unbearable pain to radiate out from his lower back to his legs and eventually up to his neck, if the pressure lasts long enough. When he sleeps, Mr. Phillips props pillows on either side of him so that his bed sheet does not touch his back because, if it does, he awakes in enormous pain. Mr. Phillips bought a laptop computer to see if he could use it in his return to school, but he was unable to use the computer because he was unable to sit up for an extended period of time. His inability to sit for an extended period of time prevents him from returning to school. Medications do not alleviate this problem because Mr. Phillips’ | nmedications make him drowsy, and he must take more medications to sit for an extended period, which makes him more drowsy.
II
In this Part we consider and explain the dual inquiry to be undertaken by the OWCJ under La. R.S. 23:1221(2)(c) and La. R.S. 23:1226 D and then turn our attention to two important decisions which guide our application of these statutes in this matter.
A
The first inquiry arises from La. R.S. 23:1221(2)(c), which states that it is the worker’s burden to prove by clear and convincing evidence that he is permanently and totally disabled:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subpar-agraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. (emphasis added)
The terms “odd lot employment,” “sheltered employment,” and employment while “working in any pain” require further explanation as these are technical terms, which arose during the long history of workers’ compensation cases. The present form of the law is a reflection of the 1983 amendments, which sought to |inrestrict the availability of workers’ compensation benefits. See Johnson, 13 La. Civ. L. Treatise, Workers’ Compensation Law and Practice, § 275 (5th ed.). Before the 1983 amendments to the statute, if a claimant’s ability to work fell under any of these three categories, the claimant would be considered permanently and totally disabled. Work able to be performed by a claimant is considered to fall into the “odd-lot” category when it is so infrequent or there is simply an insufficient market for a job. Sheltered employment is a job given by the employer to the claimant that meets the claimant’s limited ability to work. Working in substantial pain was also sufficient for permanent total disability benefits prior to the 1983 amendments.
Mr. Phillips argues that a claimant is no longer required to disprove his ability to perform “odd lot” work and that sheltered employment is unavailable to him.[2] Mr. *828 Phillips also argues that the requirement for an employee to work in pain does not exclude the possibility of benefits when pain is so severe that it prevents the claimant from working.
To meet his burden of proof, Mr. Phillips has presented objective medical evidence stating that he is permanently and totally disabled. The medical reports made in recent years, once Mr. Phillips suffered significant nerve damage, is undisputed that he is unable to return to work.
The second inquiry arises from La. R.S. 23:1226 D. Before finding that a claimant is entitled to permanent total disability benefits an OWCJ is also required Into “determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.” La. R.S. 23:1226 D.
La. R.S. 23:1226 D requires that a court look beyond the physical injury to a claimant’s ability to return to work. In Comeaux v. City of Crowley, 01-0032, p. 5 (La.7/3/01), 793 So.2d 1215, 1218, for example, Mr. Comeaux was medically approved for light to sedentary work; however, his vocational rehabilitation expert found that he was unemployable in any occupation. The Supreme Court held that “a strict view confined to the physical ingredient is misplaced” and that Mr. Comeaux’s “unsuccessful attempt at the rehabilitation required by La.Rev.Stat. 23:1226 is a proper factor to consider, along with his physical incapacity, in deciding his disability status.” Id. p. 15, 793 So.2d at 1223-1224. In so doing, the Supreme Court reversed the appellate court and reinstated Mr. Co-meaux’s award of permanent total disability-
Mr. Comeaux had injured his back in the course and scope of his employment with the City of Crowley as a tree grinder. Id. p. 2, 793 So.2d at 1216. Mr. Comeaux’s doctors recommended that he never return to heavy work and should limit his activity to light and sedentary work. Id. pp. 2-3, 793 So.2d at 1216-1217. Mr. Comeaux opted to enroll in a graduate equivalency program in lieu of seeking vocational training. Id. p. 3, 793 So.2d at 1217. The City provided h2Mr. Comeaux the statutory maximum amount of time to complete his vocational rehabilitation, fifty-two weeks, during which time Mr. Comeaux attempted to pass and failed the preliminary GED tests six times. Id.
The OWCJ found Mr. Comeaux permanently totally disabled for reasons “including, but not specifically limited to, claimant’s age ... previous work history coupled with the medical reports and the report of the vocational rehabilitation expert.” Id. p. 5, 793 So.2d at 1218. The court of appeal reversed, finding that it was appropriate to consider a totality of the circumstances, such as education, experience, and age. Id. p. 11, 793 So.2d at 1221.
The Supreme Court reversed the court of appeal, finding that the totality of the circumstances was an inappropriate test for determining total disability benefits, as opposed to supplemental earnings benefits; however, Supreme Court applauded the appellate court’s consideration of Mr. Co-meaux’s attempt at vocational rehabilitation. Id. p. 12, 793 So.2d at 1222.
B
We now address Duplessis and Hand, the two main cases cited by the opposing parties. Mr. Phillips argues that Duples-sis is more applicable, whereas the City *829 argues that Hand is more in line with the present situation.
1
Mr. Phillips argues that his situation is similar to that of the worker in Duplessis v. Tulane University Medical Center, 10-0267 (La.App. 4 Cir. 8/25/10), 47 So.3d 992. There, the worker suffered similar complications from multiple 11slaminectomies, dis-cectomies, and a fusion. Mr. Duplessis was sixty-one years old at the time of his accident in 2003. Dr. Butler, Mr. Duples-sis’ primary treating physician, who had been treating him since recently after his accident, approved him to perform sedentary work in 2007. Dr. Butler approved of medically eleven jobs found by a vocational rehabilitation expert, but Mr. Duplessis failed to apply to any of the jobs. Mr. Duplessis’ physical therapist, who administered his FCE, stated in a deposition that Mr. Duplessis was unable to complete the evaluation and that he was unable to perform any type of work. Dr. Ploger, an orthopedic surgeon, saw Mr. Duplessis for only one visit in late 2007, at which time he took an x-ray of Mr. Duplessis and opined that Mr. Duplessis was not suited for work at that time. Dr. Ploger testified at trial that Mr. Duplessis suffered from a failed fusion, which prevents him from working. Mr. Duplessis himself testified that he did not apply to the jobs because he needed to lie down on and off eight hours out of the day, carpentry work is the only work he knows how to perform, and he has various other medical issues. The OWCJ found that Mr. Duplessis was not entitled to permanent total disability benefits.
We reversed, finding that the OWCJ had committed manifest error. Mr. Du-plessis’ failed fusion and other medical problems rendered him unemployable. The vocational rehabilitation expert testified that none of the jobs she had found for Mr. Duplessis had provisions that would allow him to lie down periodically throughout the day.
114%
Because the City especially relies upon our decision in Hand v. City of New Orleans, 04-0845 (La.App. 4 Cir. 12/22/04) 892 So.2d 609, for the proposition that pain cannot be the sole source of a claimant’s award of permanent total disability, we turn to consider Hand and to distinguish it from the facts in this matter.
Mrs. Hand injured her back while working as a nurse. The OWCJ found that she was unable to return to work as a nurse, that she could not be retrained to perform any job according to La. R.S. 23:1226 D, and that she was entitled to reasonable psychiatric care. It was undisputed that Ms. Hand could not return to work as a nurse. Ms. Hand also had failed an attempt at rehabilitation to do other work. The OWC, however, found her not permanently and totally disabled.
We stated that “La. R.S. 23:1221(2)(c) requires that the employee prove that he/ she is physically unable to engage in any employment or self-employment, including employment while working in pain.” Id. p. 6, 892 So.2d at 613 (emphasis in original). We then noted that the “^jurisprudence has also found that, following the 1983 amendments to the workers’ compensation statute, evidence that an employee can not return to any gainful employment without suffering substantial pain is no longer sufficient to support an award of permanent total disability benefits.” Id. pp. 6-7, 892 So.2d at 613. We concluded that “[i]n light of the statute’s mandatory provisions, we agree with the hearing officer that a | ^disability due to chronic pain does not meet the requirements of ‘physical’ disability under La. R.S. 23:1221(2)(c).” Hand, p. 7, 892 So.2d at 613.
*830 Regardless of this enhanced restriction on workers’ compensation claims, Mr. Phillips’ claim is easily distinguishable from that of Ms. Hand. After explaining that pain alone could not be the source of a workers’ compensation claim, the court explained that when reviewing for manifest error, a choice between two reasonable alternatives can never be manifestly erroneous. Id. pp. 7-8, 892 So.2d at 614. Ms. Hand had “provided no evidence at all to meet the ‘clear and convincing evidence’ burden imposed by the statute.” Id. p. 8, 892 So.2d at 614. Furthermore, and unlike Mr. Phillips, Ms. Hand’s doctor’s opinion was different from the opinions of the City’s doctors, who opined that Ms. Hand was capable of sedentary work. The OWC, therefore, in choosing to believe the City’s doctors over Ms. Hand’s doctor, made a determination between two reasonable alternatives. There was no such choice available to the OWCJ in Mr. Phillips’ claim because Mr. Phillips’ doctors and the City’s doctor opined that he was permanently and totally disabled.
The finding that pain alone cannot justify an award of permanent total disability benefits, while it does not appear to be the court’s reason for its judgment, does not preclude Mr. Phillips’ claim because he has proven by clear and convincing evidence that he suffered physical injury to his spinal column, as documented in his doctors’ reports.
JisIII
In this Part we differentiate between the de novo and manifest error standards of review.
In workers’ compensation cases the reviewing court applies the manifest error standard of review. Even where, as here, all medical reports are contained in the record and were not presented by witnesses at trial, the manifest error rule is still applicable. See Fite v. Louisiana Title Co., 02-2607, p. 3 (La.6/27/03), 852 So.2d 983, 985. But “[w]hen legal error interdicts the fact-finding process in a workers [sic] compensation proceeding, the de novo, rather than the manifest error, standard of review applies.” Tulane University Hosp. & Clinic v. Lockheed Martin Corp., 11-0179, p. 3 (La.App. 4 Cir. 6/29/11), 70 So.3d 988, 990.
We find that the OWCJ made legal errors, both in finding that Mr. Phillips’ sole symptom was his pain and in finding that he has not presented any evidence of his inability to be rehabilitated. Mr. Phillips’ physical limitations are caused by the documented physical narrowing of his spinal column, which impinges on his nerve endings, not an amorphous allegation of pain. Further, Mr. Phillips has presented medical reports stating that he is not able to work in any capacity. The City’s own physician, Dr. Trahant, reported that Mr. Phillips is permanently disabled “for any and all types of gainful employment.” It defies logic to require a man to attempt rehabilitation for a job within his medically approved limitations when he is not medically approved to perform any work.
We, therefore, review the OWC’s decision de novo.
JljIV
In this Part we evaluate Mr. Phillips’ medical evidence and find that he has proven by clear and convincing evidence, through the reports of his and the State’s doctors, that he is permanently and totally disabled.
According to the reports of both his own doctor and the City’s doctor, Mr. Phillips is physically unable to perform any work. Mr. Phillips’ 2010 functional capacity evaluation, contrary to the OWCJ’s findings, did not approve him for any exertion level *831 for a return to work. The 2010 FCE showed that Mr. Phillips can physically perform activities associated with medium exertion level work; however, Mr. Phillips was reported to be able to perform work at the medium exertion level only “occasionally,” which is a term defined in the report as 1% to 33% of an eight-hour work day. Mr. Phillips is only able to sit and stand “frequently,” which the report defines as 34% to 66% of an eight-hour work day. The results of the 2010 FCE were not equivocal, and Mr. Phillips was reported to have “worked to full ability on all test items. Therefore these test values represent the client’s safe lifting capabilities. These values represent the client’s safe lifting capabilities, not necessarily pain free lifting capabilities.” The 2010 FCE did not return a final opinion on what capacity in which Mr. Phillips would be able to return to work.
It is uncontroverted that Mr. Phillips suffers from a physical, documented disabling condition: “lateral stenosis” (constriction or narrowing), a condition 118affecting his nervous system, documented by a lumbar myelogram[3] performed in August of 2007, and confirmed by subsequent CT scans, probably caused by a build-up of scar tissue resulting from his multiple back surgeries necessitated by his workplace injury. This is also called failed back syndrome. The correct legal standard to apply is, therefore, not that of pain without accompanying physical injury.
While Mr. Phillips may have been able to work in some capacity in 2003, as shown by his FCE and the opinions of Drs. Bartholomew and Truax, Dr. Palmer reported observing a gradual worsening of Mr. Phillips’ condition. In his testimony at trial, Mr. Phillips admits that his symptoms were relieved from 2003 to 2005. We find that Mr. Phillips, through the reports of Drs. Palmer, Hubbell, Trahant, who are the only physicians who have seen Mr. Phillips since his condition substantially worsened, has proven by clear and convincing evidence that he is entitled to permanent total disability status.
We, therefore, reverse the decision denying Mr. Phillips permanent total disability benefits.
REMAND INSTRUCTIONS
We remand this matter to the Office of Workers’ Compensation for the OWCJ to precisely calculate the benefits due to Mr. Phillips for his permanent total disability under La. R.S. 23:1221(2)(a) and to render judgment accordingly.
119DECREE
We reverse the judgment in favor of the City of New Orleans and against Kerry Phillips, which dismissed his claim with prejudice. We render judgment in his favor and against the City of New Orleans, decreeing that his work-related injury produced permanent total disability and that he is entitled to benefits for such disability. We remand the matter with instructions to the Office of Workers’ Compensation for further proceedings in accord with our instructions.
REVERSED AND REMANDED
LOVE, J., concurs and assigns Reasons.

. The report noted that Mr. Phillips "was able to perform better than 5 straight hours of *826 testing without any obvious signs of distress, no significant breaks, and had a similar heart rate and blood pressure when he started.... This indicates that [Mr. Phillips] may have attempted to control the results of this FCE.”

. The NOPD, Mr. Phillips’ employer, assigned him to a sedentary position, but his injuries prevented him from performing it.

. An x-ray of the spinal canal.