STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1218


GARY SMITH

VERSUS

DRESSER INDUSTRIES


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 07-00669
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE
************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

Jay A. Pucheu
Post Office Box 310
Marksville, Louisiana 71351-0310
(318) 253-5080
COUNSEL FOR PLAINTIFF/APPELLANT:
        Gary Smith

Mark A. Watson
Stafford, Stewart & Potter
3112 Jackson Street
Post Office Box 1711
Alexandria, Louisiana 71309-1711
(318) 487-4910
COUNSEL FOR DEFENDANT/APPELLEE:
        Dresser Industries, Inc.

**GENOVESE, JUDGE.**

In this workers' compensation suit, Gary Smith, claimant, appeals a judgment of the workers' compensation judge (WCJ) in favor of Defendant, Dresser Industries, Inc.[1] (Dresser), denying Mr. Smith's claim for permanent and total disability benefits. For the following reasons, we affirm.

## FACTS

While employed by Dresser, Mr. Smith sustained an injury on February 9, 1996. Relative to Mr. Smith's injury and subsequent treatment, the parties entered several stipulations into the record. The parties were in agreement that Mr. Smith was injured in the course and scope of his employment with Dresser on February 9, 1996, and, as a result thereof, he underwent a lumbar microdiscectomy at L4-5 on February 10, 1997. It was also stipulated that, on September 3, 1998, Mr. Smith underwent a laminectomy from L-3 through S-1, a foraminotomy bilaterally at L-3, L-4, and L-5, and a disc removal at L4-5. The parties further agreed that these surgeries were all causally related to the original work-related injury of February 9, 1996. The parties also stipulated that Mr. Smith had been paid indemnity benefits through May 13, 2007, at the applicable maximum rate of $330.00 per week, based upon an average weekly wage of $632.00. Finally, the parties agreed that Mr. Smith's medical benefits were continuing to be paid through the date of trial.

As a result of the termination of his supplemental earnings benefits (SEB) on November 14, 2006, Mr. Smith filed a Disputed Claim for Compensation (Form 1008) on January 30, 2007, alleging that the termination of his SEB was arbitrary and capricious. Mr. Smith sought back pay, interest, penalties, and attorney fees. He

---

[1]The named Defendant in the caption of this case is "Dresser Industries[,]" the employer of claimant; however, in his brief, counsel for Dresser Industries identifies the employer as "Dresser Industries, Inc.[,]" and that is how it will be referred to throughout this opinion.

amended his Form 1008 to additionally assert that the termination of his indemnity benefits was arbitrary and capricious due to his permanent and total disability (PTD) status. A subsequent amendment by Mr. Smith sought penalties and attorney fees for an alleged inadequate payment of SEB by Dresser. Mr. Smith also sought payment for the travel expenses he incurred in connection with a functional capacity evaluation (FCE).

Following trial on April 23, 2008, the WCJ denied Mr. Smith's demand for continued SEB, denied his claim for PTD benefits, and found that his SEB had not been improperly calculated. The WCJ found in favor of Mr. Smith on his claim that the travel expenses relating to the FCE were paid untimely and awarded him penalties and attorney fees. A judgment in accordance therewith was signed on June 17, 2008. It is from this judgment that Mr. Smith appeals.

## ISSUES

Mr. Smith presents the following issues for our review:

1. [Where] there were objective signs of ongoing injury, no indication of malingering, no testimony that any of plaintiff's alleged capacities translate into the ability to earn money in the work place[,] and where plaintiff's treating physician opined that he was permanently restricted from all types of employment, [did] the trial court commit[] manifest error and abuse[] its discretion in failing to find that plaintiff was permanently and totally disabled[?]

2. [Was] the trial court . . . manifestly erroneous in its application of existing law when it denied plaintiff permanent and total disability status because his inability to work was in part based upon pain caused by work activities due to his documented physical problems[?]

3. If the trial court is reversed, [what] amount of penalties and attorney's fees [are] to be awarded[?]

## LAW AND DISCUSSION

**Standard of Review**

The WCJ's denial of Mr. Smith's claim of PTD status is a factual

2

determination which is subject to the manifest error or clearly wrong standard of review. *Johnson v. E. Baton Rouge Parish Sch. Bd.*, 06-1010 (La.App. 1 Cir. 3/28/07), 961 So.2d 388. Therefore, the WCJ's judgment on this issue is to be given great weight by this court and will not be overturned unless this factual determination is clearly wrong.

**Permanent and Total Disability Status**

Mr. Smith asserts on appeal that, based upon the evidence, the trial court was manifestly erroneous in concluding that he failed to establish PTD status. His focus on appeal is that he was erroneously denied PTD status "because his inability to work was in part based upon pain caused by work activities due to his documented objective physical problems." In response, Dresser asserts, in brief: "As Judge Braddock correctly concluded, the evidence established that the only impediment to Mr. Smith's ability to perform work was his complaints of pain; and, as indicated by the statute, pain is not a permissible basis for the awarding of permanent total disability benefits." We agree with Dresser.

*Louisiana Revised Statutes 23:1221*

Louisiana Revised Statutes 23:1221(2)(c) (emphasis added) provides for PTD benefits for an injured worker if the following standard is met:

> For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, *compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain,* notwithstanding the location or availability of any such employment or self-employment.

Mindful of Mr. Smith's burden of proving by clear and convincing evidence that he

is unable to engage in employment, notwithstanding complaints of pain, we consider the testimony and exhibits introduced at trial.

*Testimony of Mr. Smith*

Mr. Smith testified that he suffers pain on a daily basis. Although he admitted that he is able to perform certain activities around his home, such as cutting his grass, it was his testimony that such activity exacerbates his pain. According to Mr. Smith, he does not do anything "real strenuous," and[,] on his "bad days[,]" he "sit[s] around and take[s] it easy." It was his testimony that he only obtains relief when he lays down or sits in a lounge chair.

*Report of Dr. Rayland K. Beurlot*

Dr. Rayland K. Beurlot performed an independent medical examination (IME) on Mr. Smith on April 10, 2007, and his report issued in connection therewith was introduced into evidence. Dr. Beurlot's diagnosis of Mr. Smith was "lumbar radiculopathy." It is noteworthy that when addressing Mr. Smith's ability to work, Dr. Beurlot did not have the benefit of the FCE, which he felt would have been "somewhat useful." However, in response to the inquiry relative to Mr. Smith's ability to work, Dr. Beurlot's report contains the following response:

> He might be able to return to some light or sedentary activity, but there would be significant restrictions concerning the actual amount of material weight handled, range of motion such as bending over, squatting, stooping, etc. He would do better at a job which requires a frequent change of position[,] and he will do poorly at any job which requires prolonged maintenance of one position, such as standing or sitting. Walking is certainly permitted, in fact, encouraged on brief, short intervals. As stated above, standing is[,] for the most part[,] to be avoided, except for extremely short periods of times. I do not expect that the functional capacity evaluation would show any trends that would change the above.

Dr. Beurlot concluded that Mr. Smith is "at least permanently partially disabled."

4

*Deposition of Andy Waldhelm*

The deposition of Mr. Andy Waldhelm was also introduced into evidence. Mr. Waldhelm, a physical therapist, performed an FCE on Mr. Smith on April 16, 17, and 18, 2007. After conducting his evaluation, Mr. Waldhelm was of the opinion that Mr. Smith was able to perform "light-medium" work. When questioned about Mr. Smith's complaints of pain, Mr. Waldhelm explained that during the FCE, Mr. Smith's pain did "increase a little bit," but "he was still able to maintain" the light to medium work level. Based on the FCE, Mr. Waldhelm was of the opinion that Mr. Smith was "[a]ble to perform work at the light-medium level with restrictions. . . ."

*Deposition of Paul Fontana*

The deposition of Mr. Paul Fontana, an occupational therapist, was also introduced into evidence. Mr. Fontana worked in connection with Mr. Waldhelm to generate the FCE report on Mr. Smith. It was Mr. Fontana's testimony that, based upon Mr. Smith's performance during the FCE over the course of three days, Mr. Smith was able to maintain work at a "light-medium" level. Mr. Fontana's opinion, based upon Mr. Smith's demonstrated abilities, was that Mr. Smith was not totally disabled.

*FCE Report*

The FCE report, which was introduced into evidence, states: "Although Mr. Smith continues to report the above pain, the client has been able to maintain work at the light medium work level. It is our professional opinion that Mr. Smith is employable at the light medium work level with restrictions as outlined in this report."

*Deposition of Dr. Kenneth Johnson*

The deposition of Dr. Kenneth Johnson, Mr. Smith's treating physician, was

introduced into evidence.  Dr. Johnson testified that his diagnosis of Mr. Smith was "chronic low back injury, degenerative disease."  He was of the opinion that Mr. Smith's limitations were light or sedentary.  Dr. Johnson "just [did not] think that he's really going to be able to do anything."  According to Dr. Johnson, if a "very light duty" job could be found, such as working "at home on a computer, rarely, off and on as is allowed, he may be able to do something like that."  As emphasized by Mr. Smith, it was Dr. Johnson's opinion that, considering the physical restrictions when combined with Mr. Smith's complaints of pain, it would be very difficult for him to work.

However, it was also Dr. Johnson's testimony that he would not impose any additional restrictions on Mr. Smith other than those identified by Dr. Beurlot and those identified as a result of the FCE.  Moreover, Dr. Johnson explained that, as a family practitioner, he "look[s] at things a little differently" than what is focused on in the other examinations.  In his words, he "approach[es] it just purely from a pain issue of what the patient can tolerate and can't tolerate."  Additionally, while the FCE and Dr. Beurlot "are dealing more with the actual body's ability to do something," Dr. Johnson "approach[es] it mainly from just a pain level."  Ultimately, Dr. Johnson testified that he would permit Mr. Smith to attempt a job that would allow him the freedom to alternate sitting, standing, and walking, if the position were within the physical limitations identified by Dr. Beurlot and the FCE.

*Jurisprudence*

The WCJ cited *Dousay v. Dousay Floor Covering*, 07-195, 07-196 (La.App. 3 Cir. 9/12/07), 966 So.2d 677, 966 So.2d 684, *writ denied*, 07-2023 (La. 12/7/07), 969 So.2d 639, in support of his conclusion that Mr. Smith failed to prove his entitlement to PTD benefits.  In *Dousay*, as in the case at bar, the claimant appealed

the denial of his claim for PTD benefits. On appeal, this court found it "noteworthy that the results of the FCE revealed that Mr. Dousay fell within the U.S. Department of Labor's light to very heavy physical demand levels." *Id*. at 681-82. We noted in *Dousay* that "[d]espite the testimony offered by Mr. Dousay and his wife as to the physical limitations suffered by Mr. Dousay because of continued pain, the WCJ correctly noted the insufficiency of these facts to support a claim for permanent total disability benefits." *Id.* at 682. "As indicated by the WCJ, none of Mr. Dousay's treating physicians testified that he was 'physically unable to engage in any employment' as required by La.R.S. 23:1221(2)(c)." *Id.* We, therefore, affirmed the judgment of the WCJ, finding that Mr. Dousay was not entitled to PTD benefits since he failed to meet his burden of proof under La.R.S. 23:1221.

Dresser also refers this court to *Bank of Winnfield & Trust Co. v. Collins*, 31,473 (La.App. 2 Cir. 2/24/99), 736 So.2d 263, which we find to be instructive on the issue of PTD status. In *Bank of Winnfield,* 763 So.2d at 266, "the claimant testified that she had been unemployed since the accident and unable to work because of the continuing pain." Although a physician testified that she was "'permanently disabled' from performing any job, he acknowledged that other than her subjective complaints of pain, there was no physical reason why [the] claimant could not engage in light-duty work activities." *Id.* In describing the type of work that the claimant would be able to perform, it was the doctor's testimony that the "claimant would only be able to perform a 'sedentary' type of job at home, where she could take frequent breaks, because she was not capable of sitting or standing for any length of time without rest intervals." *Id.* In considering the issue of PTD status, the second circuit reasoned as follows:

> Following the 1983 amendments to the workers' compensation statute, evidence that an employee could not return to any gainful

7

employment without suffering substantial pain is no longer sufficient to support an award of permanent total disability benefits. *Long v. Manville Forest Products Corp.*, 554 So.2d 181 (La.App. 2d Cir.1989); *Perrodin v. St. Landry Parish School Bd.*, 95-1563 (La.App. 3rd Cir. 5/22/96), 676 So.2d 612. Here, Dr. Weiss testified that the basis of his opinion concerning claimant's permanent disability was her continuing symptom of pain. However, the fact that claimant can only work in substantial pain is not sufficient to support recovery of permanent total disability benefits. On the basis of this record, we cannot say the workers' compensation judge was clearly wrong in finding that the claimant failed to prove by clear and convincing evidence that she was permanently and totally disabled.

*Id.* at 266-67. *See also, Whatley v. Hartford Accident & Indem. Co.*, 509 So.2d 671 (La.App. 3 Cir.), *writ denied*, 512 So.2d 441 (La.1987).

### *Conclusion*

Having reviewed the evidence in the record and the jurisprudence cited by the parties herein, we find that there are two permissible views of the evidence. We are unable to conclude that the WCJ was manifestly erroneous in concluding that Mr. Smith failed to meet his burden of proving, by clear and convincing evidence, that he is unable to engage in any employment. Rather, based upon all of the evidence discussed in detail above, the record clearly establishes that Mr. Smith is able to engage in employment, albeit with pain and restrictions. We are cognizant of the objective physical condition of Mr. Smith, and we do not question the veracity of his subjective complaints of pain; however, that alone does not render him permanently and totally disabled pursuant to La. R.S. 23:1221 and the jurisprudence interpreting same.

### **DECREE**

For the foregoing reasons, the judgment of the workers' compensation judge in favor of Dresser Industries, Inc., is affirmed. Costs of this appeal are assessed to Gary Smith.

**AFFIRMED.**

8