# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 15-379

DONALD BLAINE STELLY

VERSUS

CNA INSURANCE COMPANY AND
FRESENIUS MEDICAL CARE

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF ST. LANDRY, NO. 14-01819
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

Cooks, J., concurs and assigns written reasons.

**AFFIRMED IN PART;
REVERSED IN PART;
AND RENDERED.**

**Howard C. Dejean**
**Law Office of Howard C. Dejean, APLC**
**111 North Court Street**
**Opelousas, Louisiana 70570**
**(337) 942-1149**
**COUNSEL FOR PLAINTIFF/APPELLANT**
    **Donald Blaine Stelly**

**Roger A. Javier**
**Eric K. Buerger**
**The Javier Law Firm, LLC**
**2010 Energy Centre**
**1100 Poydras Street**
**New Orleans, Louisiana 70163**
**(504) 599-8570**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Fresenius Medical Care NA and**
     **CNA Insurance Company**

**GENOVESE, Judge.**

In this workers' compensation case, Claimant, Donald Blaine Stelly, appeals a judgment of the Office of Workers' Compensation (OWC) in favor of his employer, Fresenius Medical Care NA,[1] and its insurer, CNA Insurance Company (collectively Fresenius), denying his Motion for Summary Judgment,[2] finding him to be temporarily and totally disabled, and ordering that he submit to vocational rehabilitation. For the reasons that follow, we affirm in part, reverse in part, and render.

## FACTS AND PROCEDURAL HISTORY

Mr. Stelly was injured in a work-related accident on September 10, 2005, when he fell from a ladder. Consequently, Fresenius paid Mr. Stelly's related medical expenses and also paid him workers' compensation indemnity benefits. In connection with his injury, Mr. Stelly underwent vocational rehabilitation.

However, on March 19, 2014, Mr. Stelly filed a Disputed Claim for Compensation (1008), claiming that there existed a bona-fide dispute as to whether

---

[1]This entity is sometimes identified in the record as Fresenius Medical Care, Fresenius Medical Care NA, and Fresenius Medical Care Holdings, Inc.

[2]Relative to an appeal from the denial of a motion for summary judgment, this court stated in *Mackmer v. Estate of Angelle*, 14-665, p. 1 n.2 (La.App. 3 Cir. 12/10/14), 155 So.3d 125, 126, *writ denied*, 15-69 (La. 4/2/15), -- So.3d --:

> Generally, pursuant to La.Code Civ.P. art. 968, the denial of a motion for summary judgment is an interlocutory judgment from which an appeal may not be taken. However, when there is also an appeal from a final judgment, such as a trial court's grant of summary judgment, an appellate court may also review the interlocutory ruling. *See In re Succession of Carlton*, 11-288 (La.App. 3 Cir. 10/5/11), 77 So.3d 989, *writ denied*, 11-2840 (La. 3/2/12), 84 So.3d 532.

*See also Starkey v. Livingston Parish Council*, 12-1787 (La.App. 1 Cir. 8/6/13), 122 So.3d 570 (finding it appropriate for the appellate court to review an OWC ruling denying the employee's motion for summary judgment when also reviewing an OWC judgment on the merits).

his current disability status was temporary total or permanent total. Also in dispute was Fresenius' entitlement to have an additional functional capacity evaluation (FCE) performed. Mr. Stelly sought permanent and total disability status along with penalties and attorney fees. Concomitant with the 1008, Mr. Stelly filed a Motion for Determination of Permanent, Total Disability, Disallowance of Demand for Functional Capacity Examination and Opposition to Motion to Suspend Benefits.

Additionally, on May 12, 2014, Mr. Stelly filed a Motion for Summary Judgment, contending "that there is no dispute as to any material fact, since his treating physician, Dr. George R. Williams[,] and defendant's physician, Dr. Thad Broussard[,] have both declared that plaintiff, **DONALD BLAINE STELLY**, is permanently and totally disabled[] and that he is entitled to judgment as a matter of law."[3] The hearing on that motion was deferred to trial on the merits.

In response, Fresenius filed an answer generally denying the allegations contained in Mr. Stelly's 1008. It also filed a motion for the suspension of benefits and a motion to compel an FCE. Additionally, Fresenius argued that Mr. Stelly's Motion for Summary Judgment was premature since Mr. Stelly failed to attend the FCE and that material facts remained in dispute since the physicians disagreed on whether Mr. Stelly was permanently and totally disabled.

Considering the motions filed, on July 1, 2014, the workers' compensation judge (WCJ) ordered that an independent medical examination (IME) be performed by Dr. Clark Gunderson, an orthopedic surgeon. Dr. Gunderson's

---

[3]Dr. Williams and Dr. Broussard are both orthopedic surgeons.

2

opinion was sought on the issues of Mr. Stelly's disability status and the need for the additional FCE.[4] The IME was performed on August 7, 2014.

Fresenius, thereafter, scheduled an FCE for September 26, 2014. Mr. Stelly sought to quash the FCE, arguing that Fresenius was not entitled to an additional FCE, having already had one performed by a medical professional of its choosing. After the issue was submitted on briefs, the WCJ signed a judgment on September 24, 2014, denying Fresenius' motion to compel an additional FCE.

Mr. Stelly subsequently re-urged his motion for summary judgment and attached two additional items in support thereof, a 2009 FCE report by the Fontana Center and the reports of Genex Services, the rehabilitation counseling service. This motion was also deferred to the trial on the merits.

Following a trial on the merits, the WCJ: (1) denied Mr. Stelly's Motion for Summary Judgment; (2) found Mr. Stelly to be temporarily and totally disabled; and, (3) ordered that Mr. Stelly submit to vocational rehabilitation. From said judgment, Mr. Stelly appeals.

## ASSIGNMENTS OF ERROR

Mr. Stelly presents the following assignments of error for our review on appeal:

**ASSIGNMENT OF ERROR #1**

> The [t]rial [c]ourt erred in failing to grant the Motion for Summary Judgment, as the evidence uncontrovertedly establishes that [Mr. Stelly] is physically disabled and has undergone a failed attempt at rehabilitation[.]

**ASSIGNMENT OF ERROR #2**

> The [t]rial [c]ourt erred in failing to recognize that [Mr. Stelly] has already undergone a failed attempt at rehabilitation and in

_____

[4]Mr. Stelly had undergone an FCE at The Fontana Center in 2009.

3

applying a standard of "some physical activities" to the determination of disability, rather than "to engage in any self-employment or occupation for wages of any kind" under [La.R.S.] 23:1221(2).

**ASSIGNMENT OF ERROR #3**

The [t]rial [c]ourt erred in finding [Mr. Stelly] temporarily totally disabled rather than permanently totally disabled under [La.R.S.] 23:1221(2), as the evidence clearly shows that [he] is permanently unable ["]to engage in any self-employment or occupation for wages of any kind.["]

## LAW AND DISCUSSION

In his first assignment of error, Mr. Stelly contends that the WCJ erred in denying his motion for summary judgment. We disagree.

In *Hitchcock v. Heritage Manor Nursing Home*, 05-1010, pp. 4-5, (La.App. 3 Cir. 2/1/06), 922 So.2d 764, 767, (emphasis added) this court, discussing motions for summary judgment, stated:

> **In considering whether a genuine issue exists, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.**
>
> *Pritchard v. American Freightways Corp.*, 37,962, pp. 3-4 (La.App. 2 Cir. 12/10/03), 862 So.2d 476, 478 (emphasis added) (citations omitted). If in evaluating the evidence, the court considered the merits, made credibility determinations, evaluated testimony, or weighed evidence, summary judgment must be reversed.

*Strickland v. Doyle*, 05-11, p. 4 (La.App. 3 Cir. 4/6/05), 899 So.2d 849, 852, *writ denied*, 05-1001 (La. 6/3/05), 903 So.2d 466.

In the instant matter, in order to determine the disability status of Mr. Stelly, and considering the evidence presented, the WCJ would have been required to evaluate testimony and to weigh the evidence, which is impermissible at the summary judgment stage. Accordingly, genuine issues of material fact remained so as to preclude the grant of summary judgment, and we affirm the WCJ's denial

4

of same.

Both Mr. Stelly's second and third assignments of error address the WCJ's failure to find that he is permanently and totally disabled.[5] In *Colwell v. Summit Retirement Ctr.*, 12-1186, p. 3 (La.App. 3 Cir. 3/6/13), 128 So.3d 1029, 1032, *writ denied*, 13-755 (La.App. 5/31/13), 118 So.3d 395, this court stated the following with respect to an appellate review of an employee's disability status:

> The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately, the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. *Severio v. J.E. Merit Constructors, Inc.*, 2002-0359, p. 7 (La.App. 1 Cir. 2/14/03), 845 So.2d 465, 469.
>
> *Batiste v. Tenet Healthcare Corp.*, 09-1192, pp. 3-5 (La.App. 1 Cir. 2/12/10), 35 So.3d 352, 354-55, *writ denied*, 10-559 (La.5/7/10), 34 So.3d 864.

A finding of permanent total disability status requires a consideration of two statutes, La.R.S. 23:1221 and La.R.S. 23:1226. Our supreme court has instructed that when considering such claims, these statutes are to be read *in pari materia*. *Comeaux v. City of Crowley*, 01-32 (La. 7/3/01), 793 So.2d 1215.

Louisiana Revised Statutes 23:1221(2) sets forth the burden of proof that an

---

[5]Arguably, as phrased, assignment of error number two raises a legal question insomuch as Mr. Stelly asserts that the WCJ applied the wrong "standard of 'some physical activities' to the determination of disability," when considering the provisions of [La.R.S.] 23:1221(2). Erroneous application of a statute constitutes legal error, which would require this court to conduct a de novo review of the record when considering this appeal. *Stenson v. Pat's of Henderson Seafood*, 11-1148 (La.App. 3 Cir. 2/1/12), 84 So.3d 661, *writ denied*, 12-504 (La. 4/13/12), 85 So.3d 1253. We acknowledge the potential legal error raised by Mr. Stelly; however, we find merit to assignments of error two and three even if the application of the more stringent standard of review, the manifest error standard, is applied by this court.

employee seeking an award of permanent and total disability benefits must satisfy. When, as in the instant matter, an employee is not currently employed, La.R.S. 23:1221(2)(c) (emphasis added) is the controlling statutory provision, which provides as follows:

> For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is **physically unable to engage in any employment** or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

Louisiana Revised Statutes 23:1226(D) (emphasis added), provides in relevant part:

> Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is **reasonable probability** that, with appropriate training or education, the injured employee may be **rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education**.

The oral reasons for judgment of the WCJ succinctly and accurately summarize the opinions of Dr. Williams, Dr. Broussard, and Dr. Gunderson relative to Mr. Stelly's disability as follows:

> Dr. Broussard's medical records contained the following information: Dr. Broussard's opinion is that Mr. Stelly is permanently and totally disabled [due to] his back injury[] and subsequent surgery. In addition, Dr. Broussard felt that he is not gainfully employable regarding his lumber spine. Dr. George Williams found that Mr. Stelly was permanently disabled and cannot work. In addition, he felt he was completely and totally disabled and that he should avoid bending, twisting and lifting and walking.

6

Dr. Clark Gunderson, who is an independent medical examiner, found that Mr. Stelly was permanently and totally disabled from gainful employment. He also stated, in his medical records, that he believed that performing an FCE would be a waste of time, as he believed the apparent parameters identified for physical restrictions would be so low that he would not be employable.

. . . .

Dr. Gunderson, in his deposition, stated that [he] did not think that Mr. Stelly was going to be able to work full time, did not believe that he was going to be able to walk. He did not think that he was going to be able to lift more than five pounds.

Without detailing all of the additional medical problems of Mr. Stelly, the WCJ concluded that "**[a]ccording to all of the medical records, Mr. Stelly is permanently and totally disabled.**" (emphasis added).

After having concluded that the medical records establish that Mr. Stelly is permanently and totally disabled, the WCJ cited La.R.S. 23:1226 and denied his claim based upon the following:

There has been evidence put before the [c]ourt that Dr. Gunderson would recommend a Functional Capacity Evaluation to determine the exact restrictions that Mr. Stelly may have physically. The [c]ourt also notes that while Mr. Stelly has been found to be permanently and totally disabled by the physicians, according to Mr. Stelly's own testimony, he is capable of doing some physical activity.

Therefore, the [c]ourt finds at this time[] that there's not been a clear and convincing showing that Mr. Stelly is permanently and totally disabled. The [c]ourt finds that Mr. Stelly is, at this point in time, temporarily, totally disabled, and the [c]ourt further finds that vocational rehabilitation is needed in order to determine if Mr. Stelly can be trained in any manner that would allow him to find employment.

On appeal, Mr. Stelly argues that in denying his claim for permanent total disability status for the reasons set forth above, the WCJ failed to recognize his prior attempts at rehabilitation which were unsuccessful. We agree.

7

We find the supreme court's opinion of *Comeaux*, 793 So.2d 1215, to be instructive. In *Comeaux*, our supreme court agreed with, and further expanded upon, "the appellate court's reliance on the unsuccessful rehabilitation attempt to support [its] finding of permanently, totally disabled." *Id.* at 1222. In the words of our supreme court:

> This case requires that we construe La.Rev.Stat. 23:1226, mandating an attempt at rehabilitation before a finding of permanent total disability is made, *in pari materia* with La.Rev.Stat. 23:1221(2), defining permanently, totally disabled. Under the scenario presented in this case, involving an employee who has unsuccessfully attempted rehabilitation, it would defy logic and render La.Rev.Stat. 23:1226 meaningless to exclude from consideration the employee's inability to be educated or retrained in determining if such an employee is permanently, totally disabled. . . .
>
> Obviously, the Legislature intended, by imposing in La.Rev.Stat. 23:1226 a mandate that the prospects of rehabilitation be explored before an employee is classified as permanently, totally disabled, that the results--negative as well as positive--of such attempted rehabilitation be considered in ultimately determining disability status. As plaintiff aptly points out, a contrary conclusion would result in only paraplegics falling within the permanently, totally disabled status. That the Legislature could not have so intended such a result is evidenced by the separate statutory presumption set forth in La.Rev.Stat. 23:1221(4)(j), which provides a presumption of permanently, totally disabled for an employee that is paraplegic.
>
> Accordingly, when, as in this case, such attempt at rehabilitation fails, the employee's lack of ability to be educated or retrained cannot be ignored.

*Id.* Applying the foregoing reasoning, the supreme court found Mr. Comeaux, fifty-five years of age, with sedentary physical restrictions, whose rehabilitation efforts had failed, to be unemployable and held that he was permanently and totally disabled.

In *Smith v. Season's Manufacturing*, 01-890 (La.App. 3 Cir. 2/6/02), 815 So.2d 899, *writ denied*, 02-692 (La. 5/3/02), 815 So.2d 822, this court found a

8

forty-two year old employee, who had been unable to work for eight years due to a work-related illness and who had undergone unsuccessful rehabilitative efforts to be permanently and totally disabled. In *Smith*, Season's Manufacturing argued that Ms. Smith had "a number of highly marketable skills[,]" emphasizing that she had a high school diploma and had operated her own business. *Id.* at 903. However, this court opined that "we cannot overlook the fact that she has not worked in eight years, she has not had an improvement in her medical condition, and she has not earned any wages. Her physical condition continues to hinder her ability to work." *Id.* This court considered the rehabilitative efforts that had been unsuccessful and the "possibility of additional medical problems," and reasoned that "we cannot continue to subject [Ms.] Smith to repeated tests and attempts at rehabilitation on a trial and error basis which would only worsen her condition and prolong the inevitable-permanently, totally disabled status." *Id.* at 904.

Similar to the employee in *Smith*, Mr. Stelly's unsuccessful rehabilitation and his worsening medical conditions are germane to the issue of his disability status. In *Smith*, the employer attempted rehabilitation on the employee; however, as the court noted, "each attempt was **unsuccessful.**" *Id.* at 903. In this case, as in *Smith*, although the employee was unable to return to the same work, the employer contends that the employee remains "employable." *Id.*

In addition to failing to recognize the failed rehabilitation attempts, Mr. Stelly's assignments of error also take issue with the WCJ's reliance on Mr. Stelly's ability to perform "some physical activities" when determining the nature of his disability, "rather than 'to engage in any self-employment or occupation for wages' of any kind" under La.R.S. 23:1221(2)(a). We also find merit in this contention. The ability of an employee to perform "some physical activities" does

9

not necessarily equate to that employee being capable of performing sufficient activity so as to be able to "engage in any self-employment or occupation for wages." La.R.S. 23:1221(2). This is certainly true in Mr. Stelly's case where he is unable to stand,[6] unable to sit for long periods of time, unable to tie his own shoes, and cannot even attend to his personal hygienic needs without the aid of his wife.

Focusing on Mr. Stelly's physical restrictions, Mr. Stelly and Fresenius both rely on the report and deposition testimony of Dr. Gunderson in support of their contentions, as did the WCJ. This court has reviewed the August 8, 2014 report of Dr. Gunderson, which was done the day after the IME was performed, the deposition of Dr. Gunderson, which was taken September 9, 2014, and the report on the FCE that had been performed at the Fontana Center in 2009.

Mr. Stelly was unable to complete an entire day of the FCE when it was performed in 2009. According to the FCE report, "the assessment was concluded at this time as it is felt that it would not be conducive to competitive employment with realistic pain complaints and demonstrated fatigue at this level." The occupational therapist noted that because Mr. Stelly was only able to complete six and one-half hours, he was "unable to state conclusively whether this individual would be able to sustain this work level consistently day after day[,]" noting that "[i]t is not unusual for a client not to be able to sustain the level of work from day one on subsequent days." Based upon the six and one-half hour examination, Mr. Stelly was found to be able to function at light duty work with restrictions identified as occasional lifting of twenty pounds and frequent lifting of ten pounds,

---

[6]In brief, Fresenius argues that "a claimant does not meet his burden of proof when claimant is able to engage in some sort of employment, even though he may experience pain and restrictions." *See Smith v. Dresser Indus.*, 08-1218 (La.App. 3 Cir. 4/1/09), 6 So.3d 961. However, although Mr. Stelly did voice complaints of pain, he elaborated that his problem is not limited to pain; rather, he also suffers from weakness in his legs. This is corroborated by the testimony of his wife, who discussed incidents of him falling.

10

and he was limited to sitting and standing for thirty minutes. It was also noted that his ability to stand and sit decreased during the day. The FCE report contains the following notation:

> By the end of the [six and one-half] hour assessment[,] Mr. Stelly reported bilateral leg fatigue and leg pain. Mr. Stelly is able to stand / stand and walk more early in the day. By the end of the day[,] his leg fatigue increases to a point that standing and walking activities are more difficult without increased time off his feet. After [four] hours of functional activities[,] he would walk for approximately [seven] minutes[,] then require short period of time off his feet before resuming walk activity.

Mr. Stelly was also totally restricted from bending and ladder climbing, and had "[s]evere [r]estriction" in several areas, including driving.

Undisputedly, Dr. Gunderson's professional opinion, as worded in his August 8, 2014 report, was that he "believe[d] that performing a functional capacity evaluation would be a waste of time, as [he] believe[d] the parameters identified for physical restrictions would be so low that he would not be employable." When questioned in his deposition, Dr. Gunderson stated that he had "no problem with him having a functional capacity evaluation if the insurance company wants to put up the money for [it,]" and to undergo vocational rehabilitation, but "there just aren't jobs out there like this." Dr. Gunderson testified that Mr. Stelly could perform "[s]ome sort of activity" and that he may be employable "[i]n some fashion[;]"[7] however, he did not think that Mr. Stelly would be able to walk or to lift more than five pounds. Dr. Gunderson confirmed that the opinions he expressed in his August 2014 written report were unchanged, and he testified that Mr. Stelly's physical limitations today were not any better than they were in 2009, when the earlier FCE was performed. Finally, relative to the need

---

[7]Dr. Gunderson explained that he meant "some part-time menial labor[.]"

for an FCE, Dr. Gunderson's testimony was that he would prefer an FCE over his imposition of work restrictions on Mr. Stelly. In short, although Dr. Gunderson had no objections to an FCE, he felt that it "would be a waste of time."

Although the WCJ denied Mr. Stelly's claim for permanent and total disability status and ultimately ordered Mr. Stelly to undergo vocational rehabilitation, this court is unable to reconcile that ruling with the September 24, 2014 judgment rendered just prior to trial on October 6, 2014. Though the record does not contain a transcript of a hearing on Fresenius's motion to compel, nor the WCJ's reasons, the WCJ signed a judgment on September 24, 2014, "after reviewing the exhibits, reviewing the record and evidence, reading the memorandums, and applying the law thereto" **denying** the FCE. These rulings are inconsistent. If the WCJ was of the opinion that Mr. Stelly should undergo additional vocational rehabilitation, then he should have granted, as opposed to denying, Fresenius's motion to compel the FCE, which is a necessary component of vocational rehabilitation.

Fresenius argues that the WCJ was correct in ruling that Mr. Stelly must submit to vocational rehabilitation before being found to be permanently and totally disabled. La.R.S. 23:1226(D). However, we agree with Mr. Stelly that La.R.S. 23:1226(D) "does not simply announce a rule requiring blind application of rehabilitation in every case." The mandate under the statute requires a WCJ, prior to finding permanent and total disability status, to "determine whether there is **reasonable probability** that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve **suitable gainful employment** and whether it is in the **best interest** of such individual to undertake such training or education." *Id.*

12

Focusing on Mr. Stelly's ability to perform tasks such as mowing his grass and being able to drive, and its belief that an FCE would demonstrate an ability to perform some physical activities, Fresenius maintains that there exists a "reasonable probability" that Mr. Stelly can be rehabilitated. According to Dr. Gunderson, Mr. Stelly may be employable "[i]n some fashion[;]" however, this does not amount to "gainful employment." Based upon all the evidence presented, we do not find that there is a reasonable probability that Mr. Stelly can be rehabilitated to return to gainful employment, nor do we find that such rehabilitative efforts are in Mr. Stelly's best interest. *See Smith*, 815 So.2d 899.

At the time of trial, Mr. Stelly was a sixty-seven year old man who had a significant medical history with the most severe injury being to his back. Mr. Stelly had not been employed since 2006. He had two prior lumbar surgeries before undergoing a lumbar fusion in 2006, fusing his lumbar spine from the L2 to the S1 level. A surgical removal of the rods to provide Mr. Stelly with additional mobility was considered in 2008. Dr. Daniel Kim, Professor and Director of Spinal Neurosurgery at the Baylor College of Medicine, warned against such modification. Mr. Stelly has a herniation at L1-2, which is nonsurgical, and has neuropathy which causes him to fall and to drop things. Additionally, he has had bilateral shoulder surgery and bilateral carpal tunnel surgery. Mr. Stelly is also diabetic, has orthostatic hypotension, has a history of heart disease, and has been advised that he needs total hip replacements. Dr. Williams, Dr. Broussard, and Dr. Gunderson are all of the opinion that Mr. Stelly is permanently and totally disabled.

Mr. Stelly was provided with vocational rehabilitation with Genex from August 2009 through January 2011. He underwent an FCE at the Fontana Center

13

in 2009 and was unable to complete the testing. Mr. Stelly has twenty-three years of work experience, all of which were with Fresenius, and has had two years of training in industrial electronics. During the course of the vocational rehabilitation efforts, no suitable employment was found for Mr. Stelly. In 2009, "[a]ll light duty jobs were full[-]time jobs and outside Mr. Stelly's educational and transferable skills[,]" and, in 2011, "no job opportunities were located[.]" By all accounts, Mr. Stelly was unemployable in 2009, and his physical condition has only deteriorated since that time.

In addition to acknowledging past failed rehabilitation efforts, we find that the evidence establishes that there is no reasonable probability that he can be rehabilitated so as to return to gainful employment. We agree with Dr. Gunderson that such efforts would be a "waste of time[,]" and we do not find that it would be in his best interest. Although Mr. Stelly can do some activities for some period of time, this is severely limited.

For the foregoing reasons, we conclude that while there was some evidence supporting the WCJ's findings, the totality of the evidence reveals that the WCJ was clearly wrong. We hold that Mr. Stelly has met the burden of proof required by La.R.S 23:1221(2) to establish his entitlement to permanent and total disability status.

## DECREE

For the reasons assigned, the judgment of the Office of Workers' Compensation denying Donald Blaine Stelly's Motion for Summary Judgment is affirmed. The portion of the judgment of the Office of Workers' Compensation finding Donald Blaine Stelly to be temporarily and totally disabled, and ordering that he submit to vocational rehabilitation, is reversed. Additionally, we render

14

judgment herein decreeing Donald Blaine Stelly to be permanently and totally disabled. Costs of this appeal are assessed to Fresenius Medical Care NA and CNA Insurance Company.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AND RENDERED.**

**THIRD CIRCUIT COURT OF APPEAL**

**STATE OF LOUISIANA**

**15-379**

**DONALD BLAINE STELLY**

**VERSUS**

**CNA INSURANCE COMPANY AND
FRESENIUS MEDICAL CARE**

**Cooks, J., Concurs:**

I fully agree with the majority opinion in finding Stelly permanently and totally disabled. In light of that finding I do not agree with the affirmance of the Worker's Compensation Judge's (WCJ) ruling on the Motion for Summary Judgment. The WCJ deferred his ruling on the Motion for Summary Judgment to the merits. We find he ruled wrong on the merits. Because we find for Stelly, and render judgment in his favor on the only issue raised in his Motion for Summary Judgment, the correctness of the WCJ's ruling on the Motion for Summary Judgment is rendered moot.